FILED'10 NOV 22 07:02 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NUSCALE POWER, INC., an
Oregon corporation,                          Civil No. 10-6271-AA
                                             OPINION AND ORDER
          Plaintiff,

     vs.

JOHN A. HOWES, d/b/a
REDLAND ENERGY GROUP,
an individual,

          Defendant.
_____

Timothy W. Snider
Stephen H. Galloway
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, Oregon 97204
     Attorney for plaintiff

William E. Gaar
Michelle E. Lentzner
Buckley LeChevallier P.C.
Three Centerpointe Drive, Suite 250
Lake Oswego, Oregon 97035-8617
     Attorneys for defendant


Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff's Complaint asserts a declaratory judgment action against defendant John A. Howes to determine whether Howes is entitled to a five percent, or $750,000, commission on a $16 million bridge loan ("Bridge Loan") that plaintiff received from a third party. Defendant filed a motion to dismiss plaintiff's Complaint. Defendant's motion is denied.

<u>BACKGROUND</u>

In December 2007, Paul Lorenzini, Chief Executive Officer for plaintiff NuScale Power, Inc., met defendant Howes in Washington D.C. to discuss obtaining funding for plaintiff. Plaintiff is an Oregon corporation with its principal place of business in Corvallis, Oregon, and Howes lives in Maryland with offices in Washington D.C. and Maryland.

After this initial meeting, Lorenzini and Howes began emailing each other from Oregon, Washington D.C., and Maryland, respectively.  A month later, Howes emailed Lorenzini in Oregon about meeting with a Michael Kenwood Group ("MKG") representative who was interested in investing in plaintiff.  MKG is a private equity group based primarily in Connecticut.

In February 2008, Lorenzini and Howes met the MKG representative in Washington D.C.  Afterwards, Howes emailed Lorenzini in Oregon discussing a consulting contract.  The proposed contract set an hourly rate for Howes' consulting

activities and was sent to Lorenzini in Oregon.  Then in April
2008, Howes and Lorenzini arranged a visit in Oregon between
Howes and an MKG representative to increase MKG's interest in
investing in plaintiff.  After the meeting, Howes discussed a
commission, or "finder's fee," of five percent for any funding
that he helped secure for plaintiff.  Howes discussed this
contract via email and telephone with Lorenzini.  No written
contract ever resulted from those discussions.  The meeting with
the MKG representative was successful and in September 2008, MKG
invested $1 million in plaintiff.  Howes sent plaintiff an
invoice for five percent commission on the $1 million investment,
which plaintiff paid.

After taking a consulting position with MKG in October
2008, Howes allegedly performed infrequent consulting services
for plaintiff.  A year later, MKG loaned plaintiff $16 million,
some of which was deposited into plaintiff's Oregon accounts.  In
August 2010, Howes emailed an invoice to plaintiff requesting a
five percent commission on the $16 million loan ($750,000).
Plaintiff contends defendant is not entitled to this amount
because the parties never agreed that defendant was entitled to a
commission on all future funding that MKG provided to plaintiff.

The parties attempted to resolve the dispute without
litigation.  Eventually, Howes' Maryland attorney sent a draft
federal court complaint to plaintiff in Oregon alleging a breach

Page 3 - OPINION AND ORDER

of contract claim.  After receiving the draft complaint,

plaintiff filed this declaratory action in Oregon.

DISCUSSION

Defendant moves to dismiss plaintiff's Complaint under Fed.

R. Civ. P. 12(b)(1) and (3) alleging: 1) this court lacks subject

matter jurisdiction to make a declaratory ruling; 2) venue is

improper because the underlying events occurred in the state of

Maryland; and 3) venue is improper "because an alternative forum

exists in the state of Maryland and the state or federal forum in

Maryland would be significantly more convenient to prosecute the

lawsuit."  Def.'s Mem. in Suppt. of Def's. Mot. to Dismiss Claim

at 2.

**1.  Subject Matter Jurisdiction**

Under the Federal Declaratory Judgment Act, a federal court

"may declare the rights and other legal relations of any

interested party seeking such declaration."  28 U.S.C. § 2201(a).

The Ninth Circuit Court of Appeals has held that "[t]he exercise

of jurisdiction under the Federal Delcaratory Judgment Act . . .

is committed to the sound discretion of the federal district

courts."  Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800,

802 (9th Cir. 2002).  Whether a district court should retain

jurisdiction requires an analysis of the three Brillhart factors:

1) avoiding needless determination of state law issues; 2)

discouraging litigants from forum shopping; and 3) avoiding

Page 4 - OPINION AND ORDER

duplicative litigation. <u>Gov't. Emp. Ins. Co. v. Dizol</u>, 133 F.3d
1220, 1225 (9th Cir. 1998) (<u>en banc</u>) (citing <u>Brillhart v. Excess
Ins. Co. of America</u>, 316 U.S. 491 (1942)).

### a.  Avoiding Needless Determination of State Law

Here, this court must determine whether defendant is
entitled to a commission on the Bridge Loan.  Defendant maintains
that litigating this case in Oregon would entail needless
determination of Maryland state law because most of the events
occurred in Maryland, Connecticut, and Washington D.C.  According
to defendant, this court should decline jurisdiction because
deciding this matter would require interpretation of Maryland
state law governing contracts.

Plaintiff contends that the first factor favors plaintiff
because there is no pending state court action, and that
defendant does not intend to file one should this case be
dismissed.  As evidence, plaintiff submits the draft complaint
for breach of contract that defendant's Maryland attorney sent to
plaintiff in Oregon.  It is drafted for federal court in the
Souther District of Maryland, thus demonstrating defendant's
intent to file in federal court.  Further, given that diversity
exists between the parties, a basis for original jurisdiction
exists.  Accordingly, even if this court were to decline
jurisdiction, a federal court would still resolve the applicable
state law governing contracts.  <u>See</u> <u>Allstate Ins. Co. v. Hall</u>,

No. No. 06-CV-653 BR, 2006 U.S. Dist. LEXIS 61625, at *12 (D. Or. Aug. 29, 2006) (finding that applying well-established state law in federal court is not a violation of the first <u>Brillhart</u> factor).

Thus, I find that deciding this matter will not entail the needless determination of state law issues.  This case involves well-established state law governing contracts, which a federal court is capable of determining.  Even if this court were to decline jurisdiction under the Declaratory Judgment Act, a federal court, albeit a Maryland federal court, would decide these same issues.  Accordingly, the first factor does not weigh in favor of dismissal.

### b. Deterring Forum Shopping

With regard to the second <u>Brillhart</u> factor, defendant argues that plaintiff filed this lawsuit to prevent defendant from bringing a breach of contract action in Maryland and to force defendant and other witnesses to appear in Oregon.  Specifically, defendant maintains that plaintiff only filed this action after defendant sent plaintiff a draft state court breach of contract complaint.  Decl. of John A. Howes, p.3.  However, the draft complaint was not for state court, but for federal court in the Southern District of Maryland.  Decl. of Timothy W. Snider, Ex. 1.  Accordingly, defendant has provided no evidence that plaintiff was forum shopping to avoid state court.  While not

dispositive, the lack of a parallel state court proceeding is a large factor favoring plaintiff. Defendant's argument that plaintiff was attempting to avoid state court is therefore unsustainable.

### c. Avoiding Duplicative Litigation

The third <u>Brillhart</u> factor asks whether dismissing the action will avoid duplicative litigation. When no parallel state court action has been filed, there is no presumption that the district court should decline jurisdiction. <u>Dizol</u>, 133 F.3d at 1225. Here, no parallel state court action has been filed in either Maryland or Oregon, and, as discussed above, defendant threatened a federal court action.

Defendant maintains that he will file a breach of contract counterclaim involving Maryland state law if this court retains jurisdiction. Regardless of which state's law applies, this court is capable of resolving the dispute which involves well-established contract law. Moreover, defendant filing a counterclaim with this court does not create duplicative litigation, because determining whether defendant is entitled to the commission will settle all matters relating to this lawsuit. Therefore, I find that dismissing this matter will not avoid duplicative litigation.

### d. Other Considerations

Defendant emphasizes additional factors for determining

Page 7 - OPINION AND ORDER

whether this court should exercise jurisdiction.  These

additional factors include:

> [1] whether the declaratory action will settle all aspects
> of the controversy; [2] whether the declaratory action will
> serve a useful purpose in clarifying the legal relations at
> issue; [3] whether the declaratory action is being sought
> merely for the purposes of procedural fencing or to obtain a
> 'res judicata' advantage; [4] or whether the use of a
> declaratory action will result in entanglement between the
> federal and state court systems[;] . . . [5] the convenience
> of the parties[;] and [6] the availability and relative
> convenience of other remedies.

Dizol, 133 F.3d at 1225 n.5.

This action will decide all aspects of this controversy

because the parties' dispute is whether Howes is entitled to the

Bridge Loan commission.  Similarly, this action will clarify the

legal relations at issue between the parties.  I find no

"procedural fencing" because no parallel state or federal court

action is pending between the parties.  Likewise, there is no

entanglement between the federal and state court systems because

neither party intends to file a state court lawsuit.  As

discussed above, defendant believes Maryland is more convenient,

but for similar reasons plaintiff finds Oregon more convenient.

As for other remedies, defendant could file a breach of contract

claim in Maryland, but that alone is insufficient to warrant

abstention given that the action would likely end up in federal

court.

In conclusion, I find that retaining jurisdiction under

these circumstances is appropriate.  This case involves well-

Page 8 - OPINION AND ORDER

established state law that does not require needless
determination of state law issues.   Further, the fact that
plaintiff filed suit in Oregon federal court before defendant
filed suit in Maryland federal court does not establish forum
shopping.   Dismissing this lawsuit will not avoid duplicative
litigation because the same issue will ultimately come before a
federal court.   Finally, the other considerations enumerated in
Dizol do not favor abstention.   Therefore, defendant's motion to
dismiss for lack of subject matter jurisdiction is denied.

**2.   Venue**

     Defendant also moves to dismiss for improper venue, arguing
that a substantial part of the events occurred outside Oregon.
In cases based on diversity jurisdiction, venue exists in "a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred."   28 U.S.C. §
1391(a)(2).   The district court looks "not to a single
'triggering event' prompting the action, but to the entire
sequence of events underlying the claim."   Uffner v. La Reunion
Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001) (cited by Lee v.
Corr. Corp. of Am., 525 F.Supp. 2d 1238, 1241 (D. Haw. 2007)).

     The parties dispute whether a substantial part of the events
or omissions relevant to this action occurred in Oregon.
Defendant contends that only the events related to the Bridge
Loan commission are relevant, and that those events are

Page 9 - OPINION AND ORDER

distinguishable from events related to the consulting fee.  For
example, according to defendant, MKG's visit to Oregon played an
integral role in its later decision to invest in plaintiff but
did not play any role in the actions Howes performed to warrant
the Bridge Loan commission.

In contrast, plaintiff argues that all the events leading up
to the Bridge Loan are relevant to the dispute.  Plaintiff
specifically emphasizes six events that occurred in Oregon.
First, Howes contacted plaintiff in Oregon after introducing
plaintiff to MKG in Washington D.C.  Second, Howes emailed and
telephoned plaintiff in Oregon to discuss his retention fee for
consulting and a potential commission for finding a loan.  Third,
Howes sent his proposed consulting contract to plaintiff in
Oregon.  Fourth, Howes sent multiple invoices to plaintiff in
Oregon that also contained the five percent commission.  Most
importantly, Howes sent his invoice for the $750,000 commission
on the Bridge Loan to plaintiff in Oregon.  Fifth, Howes visited
Oregon with an MKG representative in order to facilitate funding
for plaintiff.  And sixth, the funding secured by Howes was
invested in plaintiff, an Oregon corporation.

While these events may not be relevant to defendant's theory
of the case, they clearly are relevant to plaintiff's and to the
underlying basis for defendant's breach of contract assertion.
Defendant's relationship with plaintiff further developed in

Oregon and the Bridge Loan financing was directed at and obtained
by plaintiff in Oregon.  These events constitute a substantial
part of the events or omissions that gave rise to this dispute,
and therefore, venue in Oregon is proper.

**3.   Forum Non Conveniens**

Finally, defendant moves for dismissal based on forum non
conveniens.  The doctrine of forum non conveniens allows a court
to dismiss an action if the forum is inconvenient even if the
venue is proper.  The moving party must prove "(1)the existence
of an adequate alternative forum; and (2) that the balance of
relevant private and public interest factors favor dismissal."
Creative Tech. Ltd. v. Aztech System Pte., Ltd., 61 F.3d 696, 699
(9th Cir. 1995) (citing Contact Lumber Co. v. P.T. Moges Shipping
Co., 918 F.2d 1446, 1449 (9th Cir. 1990)).  "[T]he standard to be
applied [to a motion for dismissal on the ground of *forum non
conveniens*] is whether . . . defendants have made a clear showing
of facts which . . . establish such oppression and vexation of a
defendant as to be out of proportion to plaintiff's convenience,
which may be shown to be slight or nonexistent."  Dole Food Co.
v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (alteration in
original) (quoting Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th
Cir. 1983) (internal quotations and citation omitted)).  The
United States Supreme Court has stated that "the common-law
doctrine of *forum non conveniens* 'has continuing application [in

federal courts] only in cases where the alternative forum is abroad.'" Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430 (2007) (quoting American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994)); see also Talley v. Pembrooke Occupational Health, Inc., 2009 WL 899701, at *1 (D. Ariz. Mar. 27, 2009) (denying motion to dismiss based on forum non conveniens because alternative forum was another federal district court); Graham Webb Intern., Inc. v. C.B. Sullivan Co., 2009 WL 3248123, at *8 (S.D. Cal. Oct. 8, 2009) (same).

The doctrine of forum non conveniens is inapplicable here because the alternative forum is in Maryland federal court, not abroad. See id. Granted, the doctrine still applies in rare or exceptional cases, but I do not find that those circumstances exist. Id. Defendant does not dispute this in his reply, and the cases cited by defendant in his supporting memorandum both involve alternative forums abroad. See Creative Tech., 61 F.3d at 699 (involving an alternative forum in Singapore); Paper Operations Consultants Intern., Ltd. v. S.S. Hong Kong Amber, 513 F.2d 667, 671 (1975) (involving an alternative forum in Canada).

Defendant nonetheless contends the following factors favor dismissal: 1) his residence in Maryland; 2) relevant business records exist in Maryland; and 3) several witnesses live on the east coast, including one elderly witness who lives in Maryland.

However, granting a dismissal based on forum non conveniens

Page 12 - OPINION AND ORDER

requires a clear showing that conducting proceedings in Oregon
will be of "such oppression and vexation of a defendant as to be
out of proportion to plaintiff's convenience, which may be shown
to be slight or nonexistent."  Dole Foods, 303 F.3d at 1118.
Defendant has not made such a showing.  At most, granting a
dismissal would shift the inconvenience from defendant to
plaintiff, who would be forced to litigate in Maryland even
though it is based in Oregon, with business records in Oregon,
and with witnesses in Oregon.  As to defendant's elderly witness,
assuming the witness has difficulty traveling, the court notes
that the witness may not necessarily have to travel to Oregon as
the parties may stipulate to deposition in Maryland.  See
SoccerSpecific.com v. World Class Coaching, Inc., No. 08-6109-TC,
2008 WL 4960232, at *4 (D. Or. Nov. 18, 2008) (noting that
witnesses may not need to travel to Oregon for trial if the
parties stipulate to the deposition taking place out of state)
(citing El Camino Res., LTD. v. Huntington Nat'l Bank, 2008 WL
2557596 (W.D. Mich. 2008)).  Accordingly, defendant's motion to
dismiss must fail because he cannot establish that trial in
Oregon is sufficiently oppressive.

CONCLUSION

In conclusion, I find that defendant has failed to establish
that: 1) this court lacks jurisdiction over this declaratory
judgment action; 2) a substantial part of the events or omissions

Page 13 - OPINION AND ORDER

giving rise to this action did not occur in Oregon; or 3) this court should dismiss this action under the doctrine of forum non conveniens.   Therefore, Defendant's motion to dismiss (doc. 5) is DENIED.

IT IS SO ORDERED.

Dated this _19_ day of November 2010.

Ann Aiken
United States District Judge